## Workmen's Compensation Compromises

BROWN, Deputy Attorney General, May 10, 1940.—
This department is in receipt of your recent communication, requesting our opinion regarding compromise settlements made under the authority of section 503 of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520, 77 PS §1 et seq.

Section 503 provides as follows:

"Section 503. Nothing in this act shall affect or impair any right of action which shall have accrued before this act shall take effect, except that, *because litigation is now pending as to the constitutionality of the compensation schedules contained in the amendment of this act, approved the fourth day of June, one thousand nine hundred and thirty-seven* (Pamphlet Laws, one thousand five hundred fifty-two), *the department is hereby authorized to approve agreements or supplemental agreements,* and the board and referees are hereby authorized to make awards effectuating agreements, *compromising disputes between employers and employes* or their dependents, as to the amount of compensation payable in cases arising out of accidents occurring between January first, one thousand nine hundred and thirty-eight and the effective date of this reenactment of this act, if such agreements or supplemental agreements provide for, or the parties to cases pending before the board or referees have agreed to, the payment of compensation at the rates and for the periods specified in this reenactment of this act." (Italics supplied.)

It happens that certain employers or insurance carriers have preliminarily enjoined the operation of the 1937 act, and have paid benefits provided by the Act of 1915, as amended, and effective prior to the 1937 act, giving bond for the difference between the two rates of compensation if the court determines that the 1937 schedules are constitutional. Parties who have not secured injunctions enjoy no such protection. It is apparently with this latter group that "compromise settlements" arise.

You specifically ask the following questions:

1. What constitutes a "dispute between employer and employe" which would authorize an insurance company to settle a claim on a compromise basis?

2. In view of the fact that the insurance companies have contracted to pay the full benefits of The Pennsylvania Workmen's Compensation Act and, furthermore, have collected premiums on the assumption that such benefits would be paid, can they now make settlements at less than the full benefits originally contracted for?

3. If so, under what circumstances would they be justified in so doing and what, if any, adjustment of the contract would be made?

4. What are the powers and duties of the Insurance Department and the Department of Labor and Industry (Bureau of Workmen's Compensation), respectively, in the matter of compromise settlements and supervision of section 503?

To answer your first question, it is necessary to examine carefully section 503 with the object in view of determining what the legislature was attempting. It is true that at the time of this reënactment there was pending in court an attack upon The Workmen's Compensation Act of June 4, 1937, P. L. 1552, involving benefits provided thereunder. This proceeding is still pending.

The legislature sought to provide for the contingency of court action adverse to the benefits provided by The Workmen's Compensation Act of 1937, supra. To accomplish this it provided that compromise settlements could be effectuated and authority was given to the Department of Labor and Industry to approve such compromise agreements if the 1939 rates were the basis for such compromise.

It will be noted that section 503 specifically provides that any right of action accruing before the effective date of the act shall not be impaired in any way. The provision for compromise settlements outlined above is the only exception to this general provision that any right of action shall not be impaired. In other words, the only basis

under section 503 of "a dispute between employers and employes, or their dependents", would be the contingency that the court action then instituted would result adversely to the 1937 schedules of benefits.

The purpose of the legislature in authorizing compromise settlements was to provide a way for claimants to obtain settlements and to come into immediate funds if they were content, in view of the litigation, to accept benefits provided by the 1939 schedules. The requirement that the basis of all such settlements be the 1939 schedules, in fact, limits the authority of the Department of Labor and Industry. This establishes a minimum at which such settlements may be effected. The further requirement that the Department of Labor and Industry approve all such settlements assures the result, therefore, that no settlements will be made at less than the 1939 schedules.

The legislature deemed it necessary to establish this limitation. It is rather odd that as a result we have a situation wherein the 1939 benefit rates are utilized in compromise cases arising prior to the effective date of such schedules.

We see no difficulty in this, however, because the legislature has only authorized the settlement of compromises by the Department of Labor and Industry, which in turn is a creature of the legislature. It is to be noted that section 503 states that the Workmen's Compensation Board of the Department of Labor and Industry "may" approve compromise settlements, and that there is no requirement upon the board to approve.

In other words, though the legislature has not attempted to compel compromise settlements it has, in fact, afforded an opportunity to make such settlements to such employes and beneficiaries of employes as may wish to compromise.

The director of the Bureau of Workmen's Compensation has declared that the department's approval of such compromises will be given only upon convincing evidence by the company that the beneficiary has agreed to a re-

vision "without duress." We are further assured that the department is cautious about the approval of compromise settlements and that the said settlements are not approved when there is any indication of fraud, misrepresentation, a failure of appreciation of a claimant's rights, or duress.

It should also be noted that the cases affected would be those in which the date of accident was between January 1, 1938, and June 30, 1939, inclusive, the date of the accident determining the rights of the party and the effective law not being changed by virtue of the fact that under the schedules certain payments might be made after June 30, 1939.

Your second inquiry suggests that if insurance companies have received a premium based on rates which contemplate liability to pay, in full, benefits provided in the 1937 schedules, the company should not be permitted to effect compromise settlements on a lower basis, even in view of section 503.

The reënacted section 503 does not, of course, refer only to compromise settlements effected by insurance carriers which stand in the place of employers. Self-insurers can enter into such compromise settlements. This being the case, our first reaction to the suggestion that an insurance carrier having charged premiums to pay benefits on a certain basis may not pay lesser benefits is that this would create two classes of employers, those insured under an insurance policy and those self-insured. In the interest of uniformity alone this would prove objectionable.

An insurance company has the same rights as does the employer who is the assured under one of these policies, and in fact in this opinion we have treated the employer and his insurance carrier as one and the same. It would be unfair to penalize an insurance company, even though the employer will not suffer or gain financially by reason of the compromise settlements. In effect, we would still

have two classes of employers, those insured under a policy and those self-insured.

Also, as has been developed herein, compromise settlements cannot be effected unless all parties are agreeable thereto and the department approves. This brings together all parties who can possibly be affected by such agreements, and as we view the situation there would be no need of justification in prohibiting such a compromise settlement on the grounds suggested.

This brings you to your third inquiry, which is twofold. You first ask under what circumstances, if any, the insurance carrier can pay less than full benefits, and we feel that the above has completely answered this.

Secondly, you ask what, if any, adjustment of the contract would be made.

It would not be a novel situation if you required the refunding of certain portions of premiums collected where, by reason of court decisions, full benefits have not been accorded. After the decision in Rich Hill Co. et al. v. Bashore, 334 Pa. 449 (1939), carriers were called upon to refund portions of the premiums collected because their liability was reduced by the Supreme Court declaring, in that case, certain sections of the Act of 1937 unconstitutional.

It might be contended that the matter of adjustments of premiums is purely a matter between the insurance carrier and the assured in the case of each policy. But as is well known to all insurance carriers, workmen's compensation insurance rates are established by a bureau, upon which the insurance carriers are represented, and each rate is built upon a basis that the rates be proportionate to the liability assumed. This being the case, carriers cannot be heard to object to a requirement that part of the premium collected on rates so established should be refunded in case later developments obviate the necessity of such carrier paying full benefits anticipated by the bureau in establishing the rate.

That part of the rate charged which would fairly represent protection which the insurer by reason of the compromise settlement is not called upon to afford, in effect, is not earned by the insurance company. In the exercise of his jurisdiction over insurance carriers, the Insurance Commissioner can certainly require adjustments in this respect. We are not unmindful that adjustments in this field are not unusual as workmen's compensation insurance is written on a basis of estimated pay roll of employes for the policy period, and final payment of premium on the basis of actual pay roll. It is for the Insurance Commissioner, therefore, to promulgate orders relative to such adjustments or refunds.

It is suggested, however, that in approving compromise settlements the Department of Labor and Industry should give approval on the basis that such refunds will be required, or in lieu of this the Bureau of Workmen's Compensation should give notice on the occasion of approving compromise settlements that the carrier will be called upon by the Insurance Commissioner to make an adjustment.

Your fourth inquiry opens a rather broad subject, but we feel that we can briefly answer the same by confining our discussion to the instant case as much as possible. Under our statutes both the Insurance Department and the Department of Labor and Industry are concerned with workmen's compensation, and a close coöperation between the two departments in such matters is not only highly desirable but required: section 501 of The Administrative Code of April 9, 1929, P. L. 177. Where possible, one department should disclose its actions to the other department, and if it is anticipated that an action of one department might be counter to an action of the other department, such situation should be avoided.

Of course, the entire matter of approval of agreements and supplemental agreements between employers and employes is the responsibility of the Department of Labor and Industry, but in turn the supervision of companies

is the duty of the Insurance Commissioner, and upon the Department of Labor and Industry having discovered that certain companies were making false representations or resorting to "duress" as suggested in Mr. Chestnut's letter of September 7, 1939, such conduct should have been reported to the Insurance Department.

Failure of a company to pay full benefits would be conduct of which the Insurance Commissioner could certainly take cognizance, but on the other hand the Department of Labor and Industry would be equally interested on this point, as one of its purposes is to secure workmen's compensation benefits for employes and their dependents. Therefore, in the matter of failure to pay full benefits, either the Department of Labor and Industry or the Insurance Department, or both, may act.

Of course, if the employer is not represented by an insurance carrier, some of these duties fall upon the Department of Labor and Industry exclusively.

It is our opinion and you are accordingly advised that:

1. Section 503 of The Pennsylvania Workmen's Compensation Act, as reënacted, effective July 1, 1939, provides a method whereby settlements between employers (or insurance carriers) and employes can be effected upon a basis of 1939 schedules of benefits if, in view of the attack upon the constitutionality of the 1937 schedules, the parties wish to make such agreement. There could be no "dispute" between employer and employes which could justify such a compromise because the 1937 schedules will either stand or fall and all parties will be bound accordingly.

But it is entirely proper for an employe, a beneficiary who is sui juris, or other beneficiary who is properly represented, to make a compromise settlement, and such agreements must be based upon the 1939 rates. The Bureau of Workmen's Compensation, on behalf of the Department of Labor and Industry, need not approve any such compromise since there is no requirement that the

bureau must approve. Neither section 503 nor the situation attempted to be covered by the exception contained therein should be used as a basis for compelling parties to make such compromises.

2. The fact that an insurance carrier has collected premiums at rates based on schedules of "full" benefits does not prohibit the insurance company from entering into a compromise settlement pursuant to the provisions of section 503, even though by such compromise less than full benefits are paid.

3. If for any proper reason it develops that full benefits are not paid, an adjustment should be made by the insurance carrier returning to the assured a portion of the premium collected. It would be proper for the Insurance Commissioner to require such an adjustment by compelling proportionate refunds, but the Department of Labor and Industry may give approval to compromise settlements on the basis that the refunds must be made, or at least give notice that such refunds will be required by the Insurance Commissioner.

4. Full coöperation between the Insurance Department and the Department of Labor and Industry is necessary and required, and action should not be taken by one without regard to the possibility that the other may take counteraction in the same matter.

Where the misconduct of an insurance company is involved, the Insurance Department should take the initiative in the matter of supervision, discipline, or control. Both departments are interested in insurance carriers paying full benefits because the carriers, which are under the supervision of the Insurance Department, have contracted to pay the same, and because the Department of Labor and Industry is interested in obtaining for employes and their dependents such full benefits. If no insurance carrier is involved, the duties with regard to section 503 fall upon the Department of Labor and Industry exclusively. The matter of approval or disap-

proval of compromise agreements or settlements is for the Department of Labor and Industry acting through its Bureau of Workmen's Compensation.